Our next case for argument is State Farm v. Williams May it please the court, thank you on behalf of Victoria Williams and the entire Jabara family for giving us this opportunity today. While the underlying facts of this case involved a hate crime which resulted in the death of Khalid Jabara who was 37 years old, the issue today before the court is whether or not the estate of Stephen Schmaus has liability insurance coverage to protect it from the claims my client has for negligence, for pure negligent conduct of Stephen Schmaus which resulted in the death of Khalid Jabara. After a very brief history of the underlying facts and I think that they're kind of important in this case because they're very strange and they really bear on the issue of coverage. I'm going to give this court four reasons why the district court should be overturned and there should be a finding that there is coverage for the claims against Stephen Schmaus or alternatively this case should be certified to the Oklahoma Supreme Court. In 1984 the family consisted of Muna and Haifa, the parents, and Vicky, Rami, and Khalid, their children. All of the family shortly thereafter within years became United States citizens. In 2006 Muna and Haifa moved next to Stanley Majors and Stephen Schmaus. The two were dating at the time they would later become married. In 2013 Mr. Majors returned from being incarcerated in California and he began violently tormenting the Jabara family. He would spit on them, he would mistakenly call them dirty Muslims, he would hide in the bushes and jump out and scare them. Over a two year period the Jabara family filed multiple protective orders against him. Finally in 2015 Mr. Majors was arrested for violation of one of these protective orders. He was subsequently released on bond and on September 12, 2015 he ran over Mrs. Jabara, Haifa Jabara, almost killing her, putting her in the hospital for weeks. He was arrested for that crime and charged with assault and battery with a deadly weapon. Thereafter he was held without bond for some period of time but then the bond was reduced and ultimately it was reduced to an extremely, extraordinarily low amount and on May 27, 2016 Stephen Schmaus was able to bond Mr. Majors out of jail. On July 1, 2016 Mr. Schmaus purchased the .45 and kept those in the house and didn't restrict access to Mr. Majors. On August 12, 2016 Khaled Jabara called the police at 5.02 p.m. telling them that he was being threatened by Mr. Majors. He had a gun. The police arrived 30 minutes later, knocked on the door. There was rustling at the windows. Mr. Majors didn't appear. The police left, did nothing and shortly an opened the door and when Khaled opened the door he shot him and killed him. As the court knows, the state farm policies at issue here today provide that there is liability coverage for Stephen Schmaus in the event of an occurrence under the policy. An occurrence is defined as an accident but accident is not defined under the policy. This definition is very I'm sure the court will have lots of questions about. Procedurally, we filed a lawsuit against Mr. Majors and Mr. Schmaus in district court with claims of assault and battery against Majors but a pure negligence claim against Mr. Schmaus for allowing Mr. Majors to have access to the gun and also purchasing and allowing Mr. Majors to have access to the assault and battery being intentional towards. Yes, yes your honor. Intentional does not equal accident. Yes your honor and we do not claim that there is any coverage under the policy for the claims against Mr. Majors. We have we've never claimed that. So it's the actions that precede his having the gun and being intoxicated. Absolutely. Our claim is that there is coverage under the policy for the negligence acts of Mr. Schmaus. And Salazar tells us the exact opposite. Salazar is one point and it tells us the opposite but there are very important things that have happened since Salazar that demand that this court revisit that issue and that's going to be my four points. And Salazar was interpreting Oklahoma law. It was. And unless Oklahoma law has come out and told us that Salazar is wrong. Has it done that? It has not. All right then it seems to me you got a problem because I'm supposed to I'm going to follow what the 10th Circuit says in terms of interpreting Oklahoma law and Oklahoma tells us different. Your honor but in this situation there have been very first of all there's a distinguishing there is a distinguishing fact in the policy in this case which distinguishes distinguishes it from Salazar. And second of all there have been important changes in Oklahoma law and changes throughout the country that really call for this court to revisit this issue. In terms of the differences in the policy the policy at issue here has a separation of insurance clause and this is a critical clause in this policy. It actually there's two policies there's a liability policy and the insured that they have their own policy of insurance. It makes a separate policy for that insured. That issue was not addressed at all in the Salazar case. Either the policy didn't have it or the court didn't address it. We don't know which. But that in when the issue in the case is is there an occurrence and whose perspective do we look at. It's the Williams position that you must look at the insured's perspective to determine whether or not there's an occurrence. They're the ones paying the premium and especially when there's a separation of insured's clause which tells you that's your policy. It is fundamentally unfair to look at the something the perspective of some third party or some other insured who doesn't act after you commit your negligent act when there's a separation of insured's clause. That's a critical distinction which should provide a basis for this court to revisit the issue. The second reason that this court should revisit this issue has to do with the reasonable expectations doctrine. The reasonable expectations doctrine was adopted in Oklahoma in the Max True Plastering case less than two weeks after the Salazar opinion came out. Not surprisingly the issues of ambiguity pop in the ambiguities in the policy and the court probably didn't know about it. That doctrine is a hallmark principle of insurance interpretation in Oklahoma since 1996 when it came out. Nearly every insurance coverage case addresses is there a policy ambiguity? Do we need to apply the reasonable expectations doctrine? And what that doctrine tells us is if there is an ambiguity in the policy you must apply the reasonable expectations of the insured doctrine. And an ambiguity is this, is when you can look at that policy provision and come up with two reasonable explanations. And the differences in interpretation hinge around the interpretation of occurrence? Is that what our focus is? Occurrence is defined by accident. In this case the state farm is arguing there's no occurrence because there's no accident. And they look at Stanley Majors intentional act instead of the negligent act of Schmaus. But we argue that it makes no sense to look at something other than the perspective of the insured. The insured's the one who's purchasing the policy. The insured is the one whose policy it is when there's a separation of insurance clause. And lady, your honors, if the principle of ambiguities in the policy is that there's two reasonable explanations you must apply the reasonable expectation of the insured's doctrine. And I submit to you what that means is if your honors think that maybe 50% of these law school students would think that Mr. James Wright you should look at the perspective of Mr. Schmaus and maybe 50%, 60% of them would think you know Salazar got it right. The policy doesn't tell us what to do but maybe Salazar got it right. If you have those questions in your mind Oklahoma law demands that you consider the reasonable expectations of the insured. And in this case the reasonable expectations of the insured are I bought a policy of liability insurance. A policy that's probably the most important policy that any of us are going to have in this room. I would expect that my negligence is covered. That's why I buy it. I don't buy it because somebody else might do something after the fact, after my negligence and take me outside of coverage. Here you have to show that there was an accident, right? Correct. And that the accident caused the injury. Correct. You have to show both of those. Correct. And the accident you would define as what? The accident is Stephen Schmaus purchasing a gun and bullets and allowing Stanley Majors access to them and purchasing alcohol and allowing him access to them. But that isn't a direct cause of the shooting. But your honor. There's an independent intervening act by the shooter. That is an analysis for negligence but we are doing policy analysis. In the policy analysis we have to look at what the policy says and if it isn't crystal clear, if there are multiple reasonable interpretations under Oklahoma law after Salazar essentially, you must consider the reasonable expectations of the insurer. And this policy is not remotely crystal clear. Reasonable expectation that you would be covered if someone that's living with you goes out and shoots someone intentionally. Absolutely. That's sort of off the board. Absolutely, your honor. And another good example. Here's another, here's the best hypothetical. So we should just ignore the intentional act that occurred here? Yes, because we're looking at Mr. Schmaus' perspective. He's purchasing insurance to protect him for his negligence, not what happens down the road. If State Farm is going to take that away from you, they've got to be clear in doing it. You're talking about perspectives and I get that, that you have the perspective of Mr. Majors and Mr. Schmaus, but Salazar really focused on a little bit different thing. It didn't focus, we're not talking, it focused on essentially proximity. I mean, he used the phrase, and I think this is a direct quote, quote, focus on those events directly responsible for the injury. And directly responsible would imply a level of nexus that only Mr. Majors has. And that has nothing to do with perspective. In other words, this perspective thing and creating ambiguity, that's one level, but that ambiguity has nothing to do with this core holding of Salazar. So even if I accepted your view that Oklahoma law would now imply if there was an ambiguity about perspective, we needed to go with the insurer, that doesn't do anything with this whole question of proximity and causation. Your Honor, with respect, those are issues of negligence that are not, that those are not issues of policy interpretation. When you're interpreting a policy, you have to look at what the language says and is it clear. Yes, but didn't Salazar use that language in determining what accident means, which is a policy term, right? What language, Your Honor? When Salazar used the language about focus on those events directly responsible for the injury, he was trying to determine what an accident is. Is that not right? That's what the Salazar's case was doing. Okay, an accident derives from the policy term occurrence, right? It does. Okay, then, when Salazar spoke of this language of focus on those events directly responsible for the injury, it was interpreting the policy. It was interpreting the policy, but it was ignoring the fact that there's a separation of insurance clause and it was interpreting it in a vacuum and not interpreting based on the plain language of the policy. It was not considering whether there could be one or more reasonable interpretation. That's the key change in Oklahoma law, is that when we adopted Max True Plastering, if we can sit in a courtroom and come up with two reasonable explanations or interpretations of the policy, if you and I can do it and we're both reasonable and we're not making things up, it's not preposterous, then under Oklahoma law, you must apply the Max True Plastering reasonable expectations doctrine and ask yourself what the reasonable expectations of an insured are, and they are, when I purchase insurance, I'm purchasing this to protect against my negligence, and I want to give you a really quick hypothetical that I think will answer this for you. Oklahoma, everybody has guns, so I'm going to give a hypothetical, but I carry my gun in my house robe. I carry it in my house robe and I go out in the front porch to drink my cup of coffee, and it's heavy in the robe, so I put it down right there on the ledge, and the phone rings and I get distracted and I go inside. That's negligence, that's not good. Here's the problem with Salazar. If two children come up and start playing with that loaded gun and shoot each other, that's negligence and I've got coverage. But if two homeless people or gang members come up and get in a fight with the gun and one kills the other one and it's an intentional act, I don't have that perspective. My reasonable expectations are that I purchase the most important insurance that exists, liability insurance, to protect me from my negligence, and if the insurance company is going to take it away, it's got to be crystal clear. He's the court. I'm Steve Baldwin for State Farm. Am I doing okay with the microphone? I think you're the first one. Thank you. There's a very important factual point that requires attention before I really get to anything else. The court is being asked to reverse a summary judgment ruling, and that will be a de novo ruling. There is a universe of facts or a set of facts established by the summary judgment papers themselves that I think will govern the court's review and the court's de novo consideration. A motion for summary judgment was filed by State Farm with respect to coverage issues. That motion begins at page 96 of the record, and the statement of facts is at pages 97 through 99 of the record. And then a response was made to that motion. The statement of facts in response to the motion for summary judgment begins at 238 and ends at page 241 of the record. Then finally, because the appellants believed that the case should be decided on motion for summary judgment, the second volume of the record contains the appellant's motion. The facts as stated, and I'm going to focus on the non-movements version, the facts as stated are based on a one-page petition, at least with respect to claims against Schmaus and even against Majors. A one-page petition that appears at page 106. There's no allegation of assault and battery in that petition that In addition, there is a bold statement that the gun that was used to kill Mr. Jabbar was owned by Mr. Schmaus. There's no allegation that he failed to safeguard that gun, that he failed to take proper steps to be sure that it wasn't used for an improper purpose. There is only the naked allegation of ownership. In addition, there is no reference in that petition to the provision of alcohol by Mr. Schmaus to Mr. Jabbar. It's not a matter of taking the facts and the like most favorable to the non-movement. It's a matter of looking at what facts the non-movement mustered and marshaled to oppose the motion. I understand you want to set the record straight, Mr. Baldwin, but I mean, isn't it your theory of the case that even if all of that was true, you still win? Yes, sir. Okay. And that was also the theory that the district court expressed. The district court, I think, went beyond its duty and beyond the requirements of Rule 56 and assumed negligence. If you assume negligence, then you go directly to the analysis that we see in Salazar. Okay. And, Your Honor, I'm certainly not arguing with you. I think that Salazar says that you look to the proximate cause. It uses a phrase that is kind of memorable. It asks us to look to the immediately attendant causative circumstances. And that's sort of a direct cause, proximate cause idea. And when you do that, and the court's impulse to do this was based on a court of civil appeals case called Harbor. When you do that, you see that you focus on the time of the injury, not on when the facts that contributed to the injury occurred, but on the time of the injury. And if you do that, you look to the direct cause, and the direct cause was the intentional shooting, the murder. Now, I think that there is at this point agreement that you focus on the insuring agreement, the coverage issues, and you look to whether there was an accident that in turn would qualify as an occurrence that in turn would cause the bodily injury. The negligence here consists at most of buying a gun, and if we indulge in the assumption that there is something to the provision of alcohol, the provision of alcohol. Again, there's no record evidence of that. But neither of these things are things that cause an injury. They are at most in proximate cause analysis conditions. What about the reasonable expectations argument that opposing counsel makes? That's based, yes sir, that's based on the Max True case, and that was a case that the Oklahoma Supreme Court decided in response to a certified question from Judge Sven Eric Holmes. And Max True says that in certain cases where there are ambiguities in the policy, that one way of resolving those ambiguities is to look to the expectations of the contracting parties. And that is not an exception to the general rule that in Oklahoma you determine the meaning of an insurance policy by looking to the four corners and determine whether an ambiguity exists by whether there are two ways of reading the policy as written without reference to extrinsic evidence. Rather than being something that completely replaces that general rule, this is a special case. And the court in that opinion, which is at 912 P. 7861, goes to some lengths to explain that it's a special case rather than a general rule of interpretation. Well, okay, you look at the four corners of the policy, but is the result of this Max True case that if there was an ambiguity within the four corners of the policy, then you would look to the reasonable expectations of the insurer? If there's no other way to resolve the ambiguity, I think that this is kind of the last ditch. Okay, well, given that we have to harmonize Salazar with whatever comes out of Max True, does Salazar allow for the possibility of an ambiguity in this case as it relates to the meaning of the term accident? I don't believe it does because the long established law in Oklahoma from the Briscoe case is that accident has its ordinary meaning of something that happens by chance as opposed to something that happens on purpose. And I don't think that that definition changes according to the perspective of a victim, of an accident, or according to the insurance company's view, or according to the view of the various insurers. So clearly the shooting was an unexpected event. Yes, Your Honor. And I think that the analogy is there to be made to supervening or superseding cause. And that was discussed by this court at some length a few years ago in the Gaines Tab versus ICI case. That was the case where Johnny Cochran brought a class action on behalf of all of the victims of the Oklahoma City bombing and said the fertilizer manufacturing company had been negligent. Well, the negligence apparently consisted of something more substantial than what we have to look at in this case. The idea was, in that case, that some sort of explosive grade ammonium product had been used instead of the usual commercial grade. But no one expected Tim McVeigh. No one expected that sort of intentional act. And so there was a break in the causation. I believe that... But your counsel just told us that we're not to apply what you're saying here, which is basically a negligence analysis. Proximate cause, independent intervening event, breaking the causal chain. All of that's negligence talk, isn't it? Yes, it is. And the basic question is one of contract interpretation. However, since the word cause is used, and since it's been well analyzed at law, it is natural to think about causation as a notion that has a general meaning. Everyone knows, in terms of popular culture, that there is a way of viewing causation from the standpoint of the old proverb, for the popular equivalent of but for or sine qua non causation analysis. And since 1970 and the popular Monty Python skit, everyone also knows... You're going to lose me in this, Baldwin. Go ahead. I'll talk to you later. Your Honor, the reference I'm going to make is to no one expects the Spanish Inquisition.  I think I know that one. Go ahead. An intentional murder. And that's a phrase that's used twice in Salazar. An intentional murder is the equivalent, both in tort law and in contract interpretation, of the Spanish Inquisition. It's that obvious. The unfortunate Mr. Jabara died because of an intentional act. That's not a fortuity, that's not a matter of chance of the sort that Oklahoma law permits you to buy insurance for. And that's the reason why we think that the district court ruled correctly, and that's the essence of Salazar. Under the historic definition in Oklahoma law of accident, I take it your premise is that even if Salazar didn't exist, there wouldn't be any ambiguity about what accident means. That is my position. I mean, Salazar obviously fortifies that, but going back to your reference to how Oklahoma has historically interpreted accident wouldn't make any difference, right? That is plan A and the primary position. But, dropping back from that, what harm is there for purposes of argument in looking at the perspective of Mr. Schmaus? And if you do that, you still reach the same result, that there's no coverage, because what Mr. Schmaus did, if he did what was described here today, at most constitutes something in the nature of an event that may not have been a cause, kind of a post hoc ergo proctor hoc problem, just an event that came in time before what happened, or a condition for purposes of approximate cause analysis. Or if you look to the footnote, the case that's in the footnote number two in Salazar, a case out of the Northern Districts of California, that is the American Empire surplus lines case, that case used the language establishing a future possibility of an injury to describe these sorts of conditions. There are all sorts of things that have to happen in order for a man with a gun to be in a position to make a deliberate decision to shoot someone else. There has to be gun manufacture, there has to be gun sale, there has to be whatever has to happen with sunspots and other things to put him in that position. But when he is finally there, and he makes a deliberate decision of the sort required to convict someone for first degree murder, then all those things go by the wayside, and that supersedes all of the prior conditions. And that's our position, Your Honor. Thank you for letting me correct the record. Thank you. Your Honor, I intended to say ten seconds, I don't know whether I did. You've used it. Thank you for your arguments this morning. The case is submitted.